IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ROXANNE FELLING,**

        **Plaintiff,**

  vs.

                      **CIVIL ACTION**
                      **No. 04-2374-GTV**

**HOBBY LOBBY,**

        **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff Roxanne Felling filed this action against her former employer, Defendant Hobby Lobby Stores, Inc. ("Hobby Lobby"),[1] alleging that Hobby Lobby engaged in unlawful employment practices in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., as well as the common law tort of outrage.

This action is before the court on Hobby Lobby's Motion to Dismiss, or Alternatively to Compel Arbitration and Stay Proceedings (Doc. 12) pursuant to Fed. R. Civ. P. 12(b)(1). Hobby Lobby contends that Plaintiff, while employed for Hobby Lobby, signed a written agreement to resolve all disputes related to her employment through arbitration. For the following reasons, the court grants Hobby Lobby's motion to compel arbitration and to stay the litigation pending

---

[1] Hobby Lobby asserts that it is misnamed in Plaintiff's Complaint as Hobby Lobby Stores, Inc. Hobby Lobby states that its legal name is Hob Lob Limited Partnership d/b/a Hobby Lobby Stores.

arbitration.

## I. Factual Background

In February 1997, Plaintiff began working for Hobby Lobby at its Shawnee, Kansas store. On June 2, 2000, Plaintiff signed a document titled "Memorandum to Employees Regarding Arbitration of All Claims Relating to Employment Relations or Termination" (hereinafter "memorandum"). That memorandum, in relevant part, provides:

> Effective March 4, 1998, Hobby Lobby adopted arbitration procedures for the resolution of all employment-related disputes between employees and the Company with the exception of Workers' Compensation and Unemployment Compensation matters. All covered disputes are to be submitted to an experienced independent arbitrator for decision . . . . The decision of the arbitrator will be final and binding.
>
> . . . .
>
> It is important for you to know that you will not be waiving any substantive legal rights under this arbitration procedure. The procedure simply provides that any substantive legal rights you may have will be resolved in arbitration rather than in court.
>
> Every effort has been made to assure your access to a copy of the Company's arbitration procedures as adopted by the American Arbitration Association. . . . Please review these procedures carefully. You are required to sign an acknowledgment form indicating your agreement and receipt. Every individual who works for the Company must have signed and returned this acknowledgment to be eligible for employment and continued employment with the Company. Further, your employment or continued employment after the date of your receipt will constitute your acceptance of this agreement to arbitrate and the Company's arbitration procedures. The Company hereby binds itself to this agreement to arbitrate and the Company's arbitration procedures.[2]

---

[2] The memorandum also states that Hobby Lobby is responsible for paying the arbitrator's fee and any administrative costs assessed by the American Arbitration Association.

2

After signing the agreement, Plaintiff continued to work for Hobby Lobby until September 2003.

## II. Discussion

Under the Federal Arbitration Act, 9 U.S.C. §§ 1-16, the court has the authority to stay litigation pending arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3.

The Federal Arbitration Act "evinces a strong federal policy in favor of arbitration." ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995) (citing Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987)). If an agreement contains an arbitration clause, "a presumption of arbitrability arises . . ." Id. (citing AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986)). The presumption may be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960). Where the language is broad and the agreement contains no express provision excluding an asserted dispute from arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail . . . ." Id. at 585. However, "the presumption of arbitrability falls away when the dispute . . . is whether the parties have a valid and

3

enforceable agreement in the first place." Phox v. Atriums Mgmt. Co., 230 F. Supp. 2d 1279, 1281 (D. Kan. 2002) (citations omitted).

Hobby Lobby bears the initial burden of establishing that it has a valid arbitration agreement. SmartText Corp. v. Interland, Inc., 296 F. Supp. 2d 1257, 1262-63 (D. Kan. 2003) (citations omitted); Phox, 230 F. Supp. 2d at 1282. Once Hobby Lobby has met this burden, Plaintiff must demonstrate that a genuine issue of fact remains for trial. SmartText Corp., 296 F. Supp. 2d at 1263; Phox, 230 F. Supp. 2d at 1282. "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests . . . ." Tinder v. Pinkerton Sec., 305 F.3d 728, 735 (7th Cir. 2002). When ruling on the enforceability of an agreement to arbitrate, courts generally apply ordinary state law principles that govern the formation of contracts. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (citations omitted).

Hobby Lobby maintains that Plaintiff, during her employment, signed a valid, written agreement to resolve all disputes related to her employment through arbitration. In particular, Hobby Lobby argues that a mutual intent existed to be bound by the arbitration agreement, the terms of the arbitration agreement are reasonably definite, and the arbitration agreement is supported by valid consideration. Additionally, Hobby Lobby asserts that Plaintiff's claims in her Complaint fall within the scope of the arbitration agreement because they all relate to her employment with Hobby Lobby.

Plaintiff disputes that an enforceable agreement to arbitrate exists. Generally, she contends that there was no meeting of the minds concerning an offer and an acceptance to arbitrate, nor was

4

there sufficient consideration to form a binding contract. Plaintiff also suggests that no valid agreement to arbitrate exists because she lacked bargaining power with Hobby Lobby and because Hobby Lobby failed to explain the contents of the memorandum to her. The court will address each argument in turn.[3]

### A. Meeting of the Minds

Plaintiff denies that there was an offer or acceptance for her to arbitrate. She claims that the memorandum does not state that she agreed to arbitrate her disputes or provide that she waived her right to a jury trial. Instead, Plaintiff characterizes the memorandum she signed as merely a statement of Hobby Lobby's unilateral policy to arbitrate with employees, as opposed to an agreement that binds her to arbitrate employment disputes. At best, Plaintiff maintains, the meaning of the memorandum is ambiguous and should be construed against Hobby Lobby. The court is not persuaded by Plaintiff's arguments.

"In order to form a binding contract, there must be a meeting of the minds on all essential elements." Albers v. Nelson, 809 P.2d 1191, 1198 (Kan. 1991) (citing Sidwell Oil & Gas Co. v. Loyd, 630 P.2d 1107, 1110 (1981)). "To constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same manner and agreed upon the terms of the contract." Steele v. Harrison, 552 P.2d 957, 962 (Kan. 1976) (citation omitted); see Nichols v. Coppock, 261 P. 574, 575 (Kan. 1927) (stating that

---

[3] The court has considered all of Plaintiff's arguments, even if not specifically addressed below.

5

"definiteness and certainty in an offer and acceptance are essential to the formation of a contract"). "Although the parties' intent controls regarding whether they agreed to arbitrate a particular dispute, determining their intent is a question of law for the court to decide." Armijo v. Prudential Ins. Co. of Am., 72 F.3d 793, 797 (10th Cir. 1995) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 626 (1985)). "Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." Mitsubishi, 473 U.S. at 626.

The court concludes that the memorandum relied upon by Hobby Lobby evinces a binding agreement between the parties to arbitrate. The memorandum contains an offer of continued employment, with one of the terms of such employment being that Plaintiff must submit all covered employment disputes to arbitration through Hobby Lobby's arbitration procedures. Furthermore, the memorandum expressly states that Plaintiff's continued employment "constitute[s] . . . acceptance of this agreement to arbitrate and the Company's arbitration procedures." Plaintiff does not deny that she actually signed the memorandum, and her continued employment with Hobby Lobby after signing it established her acceptance of Hobby Lobby's offer.

The court rejects Plaintiff's position that the memorandum is nothing more than a statement by Hobby Lobby regarding its policy to arbitrate with employees. "There is a distinct difference between a policy which a given employer might adopt and sincerely intend to follow, . . . and a binding contractual duty." Berry v. Gen. Motors Corp., 838 F. Supp. 1479, 1492 (D. Kan. 1993). Here, the language contained in the memorandum demonstrates an intention to form a binding agreement to arbitrate. Again, the memorandum states that "your . . . continued

6

employment after the date of your receipt will constitute your acceptance of *this agreement to arbitrate* and the Company's arbitration procedures" and that "any substantive rights you may have will be resolved in arbitration rather than in court." (emphasis added). Moreover, the memorandum provides that Hobby Lobby "binds itself to *this agreement to arbitrate* and the Company's arbitration procedures." (emphasis added). Accordingly, Plaintiff's argument that the meaning of the memorandum is ambiguous is without merit.

### B. Consideration

Next, Plaintiff argues that she was not provided any consideration for signing the memorandum. She asserts that continued employment is not consideration to support a contract when the employee is at-will. On the other hand, Hobby Lobby claims that Plaintiff's continued employment with Hobby Lobby after she signed the document is sufficient consideration.

"A contract must be supported by consideration in order to be enforceable." Varney Bus. Servs. v. Pottroff, 59 P.3d 1003, 1014 (Kan. 2002) (citations omitted). "A promise is without consideration when the promise is given by one party to another without anything being bargained for and given in exchange for it." Id. (citation omitted).

An employer's specific promise to continue to employ an at-will employee may provide valid consideration for an employee's promise to forgo certain rights. See Durkin v. Cigna Prop. & Cas. Corp., 942 F. Supp. 481, 483, 488 (D. Kan. 1996) (concluding that the plaintiff's continued employment provided sufficient consideration, even though such employment was at-will). Additionally, Plaintiff's contention fails because Hobby Lobby also has the obligation to submit its claims against Plaintiff to arbitration. Mutual promises to arbitrate serve as sufficient

consideration. Perkins v. Rent-A-Center, Inc., No. 04-2019-GTV, 2004 WL 1047919, at *3 (D. Kan. May 5, 2004). The court therefore concludes that the memorandum is supported by mutual consideration.

### C. Lack of Bargaining Power and Explanation

Plaintiff appears to argue, without providing headings to that effect, that the memorandum is unenforceable because of the lack of bargaining power she possessed and because of Hobby Lobby's failure to explain the memorandum to her. Plaintiff contends that the memorandum contained only boilerplate language without her input, that it was "a take it or leave it procedure," and that she "was simply told to sign it" without an explanation as to its contents. To the extent Plaintiff argues that the memorandum amounted to a contract of adhesion or that she was disadvantaged in the bargaining process, the court concludes that her argument is without merit. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991) ("Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context."). Additionally, while Plaintiff states that Hobby Lobby was secretive about the memorandum and that it did not explain the contents of the memorandum to her, she does not allege that Hobby Lobby fraudulently induced her to sign the memorandum, misrepresented the facts concerning the memorandum, or forced her to sign the memorandum under duress. In Kansas, "a contracting party is under the duty to learn the contents of a written contract before signing it." Rosenbaum v. Texas Engergies, Inc., 736 P.2d 888, 891 (Kan. 1987) (citation omitted). "As a result of this duty, a person who signs a written contract is bound by its terms regardless of his or her failure to read and understand its terms." Id. at 892. Thus, a party

who signs an instrument is presumed to know its contents. This principle applies to arbitration agreements. See Booker v. Robert Half Int'l, Inc., 315 F. Supp. 2d 94, 101 (D.D.C. 2004) (citations omitted) (stating that an employee's assertion that she failed to read or understand an arbitration agreement or that the employer failed to explain it does not relieve the employee's obligation to comply with the terms of the arbitration agreement that she signed).

The court concludes that Hobby Lobby has met its burden of establishing that a valid arbitration agreement exists. After reviewing the memorandum and Plaintiff's Complaint, the court also determines that all of Plaintiff's claims fall within the scope of the arbitration agreement. Accordingly, the court stays this action and orders the case submitted to arbitration.

IT IS, THEREFORE, BY THE COURT ORDERED that Hobby Lobby's motion to compel arbitration and to stay the litigation pending arbitration (Doc. 12) is granted.

Copies of this order shall be transmitted to counsel of record.

**IT IS SO ORDERED.**

Dated at Kansas City, Kansas, this 19th day of April 2005.


/s/ G.T. VanBebber
G. Thomas VanBebber
United States Senior District Judge